# Employment Status of "Volunteers" Connected with Federal Advisory Committees

The Department of Commerce may employ volunteers as consultants to the President's Task Force on Private Sector Initiatives pursuant to 5 U.S.C. § 3109, as long as the services involved are temporary or intermittent, and purely advisory in nature. It must also be clearly understood that such volunteers expect no governmental compensation.

Federal agencies ordinarily may not accept voluntary services or other donations in the absence of express statutory authority, and volunteers should not in any case be used on a broad scale or to accomplish tasks ordinarily performed by paid government employees.

February 25, 1982

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

Members of your staff have asked us for advice concerning the employment status of persons who volunteer to assist a federal advisory committee. We have been given materials describing the President's Task Force on Private Sector Initiatives (Task Force), an advisory committee created by Executive Order No. 12329, 46 Fed. Reg. 50919 (1981), and we have been asked to comment specifically on the propriety of accepting certain donations and voluntary services in this context. We conclude that, subject to the specific limitations described below, voluntary services of consultants and other donations may be accepted by the government to assist this advisory committee.

## Background

The Task Force was established in accordance with the provisions of the Federal Advisory Committee Act, as amended (5 U.S.C. App. I), to advise the President and the Secretary of Commerce concerning methods of promoting private sector activities designed to meet public needs, and to serve as a focal point for such private sector initiatives. *See* Exec. Order No. 12329, §§ 1 and 2. The membership of the Task Force consists of both private citizens and public officials from the federal, state, and local governments. *Id.* at § 1. Members of the Task Force serve without compensation, but the government may pay their expenses pursuant to 5 U.S.C. §§ 5701–5707. *Id.* at § 3(b). The Department of Commerce is responsible for providing the Task Force with "such administrative

160

services, funds, facilities, staff, and other support services as may be necessary for the effective performance of its functions." *Id.* at § 3(c).[1]

In addition to staff provided by the Department of Commerce,[2] the Task Force would be "loaned" personnel from various corporations or other private entities,[3] and it would receive donations and loans of equipment from such private sources.[4] One corporation also has proposed to contribute the salary of another Task Force employee by donating money to a charitable organization[5] that would compensate the "employee" directly for his services to the Task Force.

## Discussion

### A. *Personnel*

(1) Voluntary Service. The Federal Advisory Committee Act provides that the Director of the Office of Management and Budget (OMB) shall establish guidelines with respect to rates of pay for services of members, staffs, and consultants of advisory committees. 5 U.S.C. App. I, § 7(d). The OMB guidelines address the question of voluntary services as follows:

> The provisions of this section [dealing with pay for members, staff and consultants] shall not prevent an agency from accepting the voluntary services of a member of an advisory committee, or a member of the staff of an advisory committee, provided that the agency has authority to accept such services without compensation.

OMB Circular No. A–63, § 11(d) at A–9 (1974).

As a general matter, federal agencies do not have the authority to accept voluntary services. In fact, Congress has expressly provided in the Anti-Deficiency Act that "[n]o officer or employee of the United States shall accept voluntary service for the United States . . . except in cases of emergency involving the safety of human life or the protection of property." 31 U.S.C. § 665(b) (1976). In addition, employees may not waive a salary for which Congress has set a minimum. *See, e.g., Glavey* v. *United States*, 182 U.S. 595 (1901).

---

[1] Travel and support services, of course, may be provided only to the extent otherwise authorized by law, and subject to the availability of funds. *See* §§ 3(b) and 3(c) of Exec. Order No. 12329

[2] The Commerce Department staff includes regular Commerce Department employees who are assigned to assist the Task Force, as well as employees hired specifically for the Task Force and paid with funds provided by the Commerce Department

[3] We understand that the "loaned" personnel will serve the Task Force in either a full-time or a part-time capacity, but that they are all otherwise employees of the donors. To date, the Task Force has been offered the services of one person from each of the following entities the American Stock Exchange, RCA Corporation, Armco Steel, Aetna Life and Casualty, and Call for Action (a national volunteer network).

[4] The donations in kind consist of the following: four typewriters (from IBM), stationery (from Mead Paper Corporation), one Apple Computer, word processing software, and one televideo CRT unit (from Armco); and a one-year loan of a duplicating machine, including free installation, servicing, and supplies (from Xerox Corporation)

[5] The organization would be exempt from taxation under 26 U S C. § 501(c)(3)

161

Although the interpretation of § 665(b) has not been entirely consistent over the years, the weight of authority does support the view that the section was intended to eliminate subsequent claims against the United States for compensation of the "volunteer," rather than to deprive the government of the benefit of truly gratuitous services.[6] Section 665(b) accordingly has been read as a complete bar to subsequent compensation of a "volunteer," and as an admonition to federal agencies to reach an express understanding with such volunteers that they will receive no government compensation.[7]

In addition to the limitation of liability rationale underlying § 665(b), agencies contemplating the acceptance of volunteer services must also take account of the fact that an individual may not waive a salary for which Congress has fixed a minimum. *See, e.g., Glavey, supra.* Whether this principle is expressed as a matter of personnel management or unauthorized augmentation of appropriations, it has always been interpreted to limit the situations in which services may be accepted.[8]

There are, however, discrete situations where Congress has not set minimum salaries for employees. For example, there is no minimum salary set for persons employed as consultants pursuant to 5 U.S.C. § 3109.[9] Although consultants may not be employed to perform "governmental functions," and their services must be intermittent or temporary and limited to tasks of a purely advisory nature, it seems likely to us that some of the Task Force staff positions would fit this description.[10] To the extent that individuals serving the Task Force work as consultants, they may do so on a volunteer basis, so long as it is clear that they expect no governmental compensation. We understand that the Commerce Department will require each "consultant volunteer" to execute a written waiver of compensation, which should be sufficient to protect the government from subsequent salary claims.

We should emphasize that our research on this subject has revealed a virtually unanimous view that there is an avowed preference for paid government employ-

[6] The legislative history, as well as the judicial and administrative interpretations of § 665(b) are discussed at some length in an opinion of this Office dated May 25, 1976 You should refer to the 1976 opinion for a full analysis of the law of voluntary services. In this opinion, we will simply apply the prevailing interpretation of the law to the Task Force Advisory Committee.

[7] Our interpretation of § 665(b) is bolstered by a subsequent congressional enactment permitting federal employees who serve "without compensation" (WOCs) to accept a salary for their government service from a source outside the government *See* 18 U S C. § 209. Section 209 makes no reference in its text or legislative history to a bar on the acceptance of voluntary services by the government, but it surely contemplates that there are circumstances where the acceptance of uncompensated service is proper For a discussion of voluntary services that have been specifically authorized by Congress, *see Antitrust Subcommittee of the House Comm. on the Judiciary,* 84th Cong , 2d Sess , Interim Report on WOCs and Government Advisory Groups (Comm. Print, 1956) (hereinafter referred to as Interim Report). *See also* 5 U S C § 3111 which specifically authorizes the acceptance of volunteer services from students.

[8] *See* discussion in opinion of May 25, 1976, referred to in footnote 6 As you know, most federal positions are covered by the General Salary (GS) schedule, for which Congress has set fixed minimums. *See* 5 U.S.C. § 5101 *et seq.* While this fixed salary schedule actually exempts persons who serve "without compensation," 5 U S.C § 5102(c) 13, the policy underlying the schedules has been read to counsel against the use of volunteers to accomplish tasks that would ordinarily be performed by employees covered by the schedule

[9] As we have recently advised you, there is also no minimum salary set for certain employees of the White House staff.

[10] *See* OMB Circular A–120 (1980) for a full description of the limitations on the use of consultants We will leave it to the judgment of the Commerce Department to determine which of the Task Force staff positions may appropriately be filled by consultants

162

ment. *See, e.g., Interim Report, supra* at 23–9. The express prohibition in § 665(b) on the acceptance of voluntary services admittedly has caused some uncertainty about the propriety of uncompensated government service when such service is not expressly authorized by statute.[11] Although there is no express statutory authorization for volunteer consultants to the Task Force, we are comfortable with the position that the absence of a minimum salary level, and the nature of consultant services, make the use of volunteer consultants acceptable in this context. We must advise caution, however, against the use of volunteers on a broad scale or to accomplish tasks ordinarily performed by paid government employees.[12]

(2) Conflict of Interest. Having determined that it is appropriate as a general matter for the Commerce Department to accept volunteer consultants to serve the Task Force, we next must determine the extent to which the conflict of interest statutes and agency conduct regulations will apply to these volunteers. The Federal Personnel Manual (FPM), Ch. 735, App. C (1969), sets forth the principles for determining whether persons serving the government on a temporary or intermittent basis are subject to the conflict of interest laws. Briefly, the FPM distinguishes between (1) persons "whose advice is obtained by an agency . . . because of [their] individual qualifications and who serve . . . in an independent capacity" and (2) persons who are asked "to present the views of a nongovernmental organization[s] or group[s] which [they] represent, or for which [they are] in a position to speak." FPM, App. C at p. C–4. The former category of independent experts is deemed to be subject to the conflict of interest laws because their service to the government is expected to be impartial, and free from outside influence or control. The latter category of private representatives, on the other hand, is not subject to the conflict of interest laws because it is expected that such persons would be influenced by the private groups that they have been chosen to represent.[13]

---

[11] For a discussion of statutes which expressly authorize government employment without compensation, *see Interim Report, supra* at 120. *See also* 5 U S C. § 3111

[12] *See in particular, Interim Report, supra* at 23 and App B, citing Executive Order No 10182 (Nov. 21, 1950) 15 Fed. Reg 8013 which governed the use of "WOCs" as authorized by the Defense Production Act of 1950. The Executive Order provides that

> So far as possible, operations under the Act shall be carried on by full-time, salaried employees of the Government, and appointments under this authority shall be to advisory or consultative positions only.
>
> Appointments to positions other than advisory or consultative may be made under this order only when the requirements of the position are such that the incumbent must personally possess outstanding experience and ability not obtainable on a full-time, salaried basis.

*Interim Report, supra* at 121.

[13] We have found that these FPM criteria are ordinarily the most useful standard to apply in determining whether particular persons who serve an advisory committee are federal employees for purposes of the conflict of interest laws There are, however, other factors that may be relevant to such a determination. For example, if a person performs a government function, receives a government salary, or is supervised directly by government employees, it is likely that he will be deemed a federal employee for other personnel purposes. *See* 5 U S C. § 2105(a), and *Lodge 1858, AFGE* v *NASA,* 424 F. Supp. 186 (D.D.C 1976) Similarly, the Standards of Conduct for the Commerce Department apply to "[e]very other person who is retained, designated, appointed, or employed by a Federal officer or employee, who is engaged in the performance of a function of the Department under authority of law or an Executive act, and who is subject to the supervision of a Federal officer or employee while engaged in the performance of duties of his position not only as to what he does but also as to how he performs his duties, regardless of whether the relationship to the Department is created by assignment, detail, contract, agreement or otherwise" 15 C F.R § 0 735–4 (1981).

Although the members of the Task Force may not be subject to the conflict of interest laws under this formulation, members of the Task Force staff (*i.e.*, the regular Commerce Department employees or the staff hired with Commerce Department funds) would be subject to those statutes. Given our understanding of the Task Force and the role of the consultant volunteers, we would be inclined to place the volunteers in the category of the staff employees who are fully subject to the conflict of interest laws. We reach this conclusion based upon our understanding that the volunteers will be performing impartial professional services for the Task Force.[14]

One conflict of interest issue will be especially significant to the Task Force volunteers. As Commerce Department employees, the volunteers will be subject to rules governing outside compensation and gifts. While government employees serving without compensation are not prohibited by 18 U.S.C. § 209 from accepting a salary from an outside source, they should not accept anything of value (including a salary) under circumstances that will create, or appear to create, a conflict of interest. The Commerce Department Standards of Conduct prohibit employees from soliciting or accepting any compensation or other thing of value from a person who:

> (1) Has, or is seeking to obtain, contractual or other business or financial relations with the Department of Commerce;
>
> (2) Conducts operations or activities that are regulated by the Department of Commerce; or
>
> (3) Has interests that may be substantially affected by the performance or nonperformance of the employee's official duty or by actions of the Department.

15 C.F.R. § 0.735-11(a).

There is an exception to this rule when the acceptance of the compensation

> is determined by the head of the operating unit concerned to be necessary and appropriate in view of the work of the Department and the duties and responsibilities of the employee.

15 C.F.R. § 0.735-11(b)(5).

We are not in a position to give you a definitive interpretation of this regulation for purposes of the Task Force. While we would note the likelihood that a donor such as Armco Steel has business relations with the Commerce Department, we are not aware of any particular interest of this donor in the work of the Task Force. The Commerce Department, therefore, may feel that it is appropriate to apply the above-quoted exemption to the situation of the "volunteer" from Armco. In this manner each payment should be reviewed carefully and individually, and we will

---

[14] Since it appears that the volunteers will be serving for more than 130 days, they will be subject to the conflict of interest laws as regular, rather than special government employees. Appendix C of the FPM summarizes the conflict statutes as they apply to both regular and special government employees. Specific questions about the application of these statutes or the Commerce Department Standards of Conduct should be directed to the Designated Agency Ethics Official for that Department or the Office of Government Ethics.

defer to the judgment of the Commerce Department about the propriety of payments in specific cases.[15]

## B. Equipment

The Secretary of Commerce has been given authority by Congress to accept gifts of property for the purpose of aiding or facilitating the work of that Department. *See* 15 U.S.C. § 1522. In order to implement this authority, the Secretary has issued an Administrative Order (DAO–203–9), dated July 30, 1965, governing the acceptance of gifts and bequests by the Department.[16] We understand that the anticipated donation of supplies and equipment to the Task Force will be processed by the Commerce Department pursuant to this order. You should be aware that the order provides that gifts shall not be accepted unless they meet specific conditions, which include the following:

> [the gift] would not involve in substance, or have the appearance of involving, personal benefit to an employee for or in contemplation of services to the donor.

> Its acceptance would not tend to result in public misunderstanding concerning the ability of any Department employee to carry out his official duties in a fair, independent, impartial, or objective manner.

> Its acceptance would not compromise or appear to compromise the honesty and integrity of departmental programs or of its employees and their official actions or decisions.

Administrative Order at p. 2. We would interpret these conditions to suggest that the Commerce Department direct the same kind of attention to the identity of donors as we described previously with regard to the volunteers.[17]

## Conclusion

For the reasons discussed above, we conclude that it would be appropriate for the Commerce Department to accept "volunteer" consultants to assist the Task Force. These volunteer consultants may receive a salary from an outside source, so long as the salary payment does not otherwise create a conflict of interest.

---

[15] We do not fully understand the reasons for the one proposed corporate payment to a volunteer through a tax-exempt organization. While we are not prepared to state unequivocally that such payment is improper, we must express special concern about the advisability of this proposal At the least, we would note that the conflict of interest regulations may not be circumvented by such a mechanism, both the corporation and the tax-exempt organization should be scrutinized as to any disqualifying conflicts.

[16] The order expressly provides that it shall not govern the donation of personal services.

[17] You have not asked us for advice concerning the propriety of soliciting, as opposed to accepting, donations of property or services. Since we do not know whether, or in what manner, the Task Force would be soliciting donations, we have not attempted to address that issue in this memorandum.

Under similar standards, donations of equipment may be accepted on behalf of the Task Force.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*